**UNITED STATES of America,**

v.

**Salvador PARDO-BOLLAND, Juan Carlo Arizti and Rene Bruchon, Defendants.**

United States District Court
S. D. New York.
May 12, 1964.

See also 229 F.Supp. 53.

Robert M. Morgenthau, U. S. Atty., for the S. D. of New York, New York City, for the United States (William M. Tendy, Asst. U. S. Atty., of counsel).

Bernard M. Tompkins, New York City, for defendant Salvador Pardo-Bolland.

MacMAHON, District Judge.

Defendant Salvador Pardo-Bolland moves under Rule 41(e) of the Federal Rules of Criminal Procedure for an order directing (1) the return of property taken from his person at the time of his arrest on the ground that the arrest was unlawfully made without a warrant and that, in any event, the items of property seized were not instrumentalities of crime; (2) the return of property seized later the same day from his hotel room on the ground that the search was unlawfully made without a warrant and that, in any event, the items of property seized were not instrumentalities of crime; and (3) the suppression of unspecified evidence claimed to have been obtained by wiretaps violative of the Communications Act, Title 47 United States Code § 605.

■ The court declined to hear evidence upon the claimed violation of the Communications Act. There is no possible justification for burdening this congested court with a hearing which may ultimately prove to be academic. Even if we assume that the government did engage in wiretapping, it may never use evidence so obtained or any fruits of the poisoned tree. At this stage, the motion is at best hypothetical. The issue cannot be decided until all the relevant facts are before the court upon or after the trial.

■■ Accordingly, the application is denied as premature. United States v. Gruber, 39 F.Supp. 291, 295 (S.D.N.Y. 1941); Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939). In any event, the moving affidavit by defendant is so lacking in specific statements of evidentiary facts that it fails to raise an issue. All it asserts on the subject is that: "On information and belief U. S. Government Agents also monitored, intercepted and listened in on my personal telephone conversations at the Hotel Elysee to obtain evidence against me, in violation of law." The charges are so manifestly devoid of evidential support that they require neither an answer [1] nor a hearing. The burden is upon the defendant to establish that his wires have been tapped. Nardone v. United States, supra; United States v. Coplon, 185 F.2d 629, 28 A.L.R.2d 1041 (2 Cir. 1950), cert. denied, 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688 (1952); United States v. Casanova, 213 F.Supp. 654 (S.D.N.Y.1963). That burden requires allegations of evidentiary facts upon personal knowledge, or at least disclosure of the sources of the deponent's information and the grounds for his belief, to support a demand for a hearing. United States v. Casanova, supra, 213 F.Supp. at 657 n. 10. Otherwise, the government's case would be prematurely exposed and the court burdened with hearing nothing but a stark fishing expedition by the defendant. Indeed, this phase of the motion is so ill-founded that we conclude that it was made in bad faith for the sole purpose of gaining a preview of the government's evidence.

■ The court did hear evidence upon the issue of illegal search and seizure. That evidence clearly established that agents of the Federal Bureau of Nar-

1. Nonetheless, the Assistant United States Attorney avers that he has been informed by agents of the Federal Bureau of Narcotics who participated in the investigation that at no time during the course of the investigation was there any illegal interception of any of defendant's telephone communications.

cotics had probable cause to arrest petitioner without a warrant. After petitioner's arrest, Judge Cannella, upon a clear showing of probable cause, issued a valid warrant for the search of petitioner's hotel room, and the room was searched pursuant to the warrant. It would serve no useful purpose to detail the evidence. Suffice it to say that there was more than reasonable ground to believe that defendant was engaged with others in an international conspiracy illegally to import enormous quantities of narcotics into the United States from France, and he has since been indicted for that crime.

Impliedly conceding the existence of probable cause, the only contention made by defendant's counsel at the close of the hearing was that the items seized both from petitioner's person, incident to his arrest, and those later seized from petitioner's hotel room pursuant to the search warrant were not properly the subject of seizure. In short, defendant contends that the items seized were not the means, instruments or fruits of the alleged crime, but private papers desired by the government merely for use as evidence and, therefore, not subject to seizure, however lawful the search. Abel v. United States, 362 U.S. 217, 234–235, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Gouled v. United States, 255 U.S. 298, 310, 41 S.Ct. 261, 65 L.Ed. 647 (1921). The government argues that the power to search a person incident to a lawful arrest and seize the property found upon him for use upon the trial is not restricted to the implements of crime, but extends to any relevant evidence.

■ English and American law have always recognized the right on the part of arresting officers "to search the person of the accused when legally arrested, to discover and seize the fruits *or evidences of crime.*" Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 344, 58 L.Ed. 652 (1914) (emphasis supplied). In such cases, seizure is not restricted to things which might be taken under a search warrant where there is no arrest of the possessor. In the words of Judge Cardozo, "[t]he peace officer empowered to arrest must be empowered to disarm. If he may disarm, he may search, lest a weapon be concealed. The search being lawful, he retains what he finds, *if connected with the crime.* We may be sure that the law would be flouted and derided if, defeating its own ends, it drew too fine a point, after sanctioning the search, between the things to be retained and the things to be returned. * * * The search, we are told, may lawfully be made, but what is found must be returned, though it be proof positive of guilt, unless at the same time it is an implement of felony. This is to carry the immunity beyond the bounds of reason." People v. Chiagles, 237 N.Y. 193, 197–198, 142 N.E. 583, 32 A.L.R. 676 (1923) [2] (emphasis supplied). We think it clear, therefore, that all of the items [3] taken from petitioner's person incident to his lawful arrest may be retained by the government and used upon the trial insofar as relevant. Draper v. United States, 248 F.2d 295, 299 (10 Cir. 1957); Kernick v. United States, 242 F.2d 818 (8 Cir. 1957); Shepherd v. United States, 100 U.S.App.D.C. 302,

---

2. Cited with approval in Harris v. United States, 331 U.S. 145, 150 n. 11, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947).

3. The following items were seized from the person of petitioner at the time of his arrest, and the government has consented to return item (6):

(1) One tan wallet containing $229.00 in United States currency, plus various business cards.

(2) Diplomatic Passport in the name of Salvador Pardo-Bolland issued by the Estados Unidos Mexicanos.

(3) First National City Bank of New York Travelers Checks, total Amount $110.00.

(4) Bank of America Travelers Checks in the amount of $220.00.

(5) One United Nations Delegation Pass (16 Sessions) in the name of Salvador Pardo-Bolland.

(6) One lock of brown hair with card stating "I Love You."

244 F.2d 750, 755 (1956); United States v. Kirschenblatt, 16 F.2d 202, 203, 51 A.L.R. 416 (2 Cir. 1926). If, however, the items prove to be irrelevant or immaterial upon the trial, they should be returned to the defendant immediately upon its conclusion. Cf. People v. Chiagles, supra, 237 N.Y. at 199, 142 N.E. 583.

██ The items seized from petitioner's hotel room under a lawful warrant are governed by a different principle. Seizure in such circumstances is limited by Rule 41(b) (2) of the Federal Rules of Criminal Procedure to property "[d]esigned or intended for use or which is or has been used as the means of committing a criminal offense". Thus, not every item seized under a valid warrant may be retained and used as evidence however relevant the item or lawful the search which produces it. Abel v. United States, supra, 362 U.S. at 234, 80 S.Ct. 683. A valid warrant does not give searching officers *carte blanche* to make a general exploratory search of premises for incriminatory evidence (United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932); Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931)), but there is not the slightest suggestion, much less evidence, that such a search was conducted here. Rather the evidence shows that the search was reasonably confined to petitioner's hotel room and the items seized limited to the following:

(1) Program for Le Carrousel.
(2) Check Book, Commercial Bank of Covington, Louisiana.
(3) Bill for Hotel Continental, Paris, dated February 16, 1964.
(4) Prescription from Dr. Schollar, dated 1/2/64.
(5) Pan American Airlines Ticket #026–441898462 and assorted papers with figures.
(6) Hotel Stationery.
(7) TWA Ticket Stubs #01516308-5896 and #015563003223.
(8) Immunization Card (Passport purposes).
(9) Some business cards, four (4) matchbooks, toothpicks, Hotel Lotti, Cannes, perfume box, for Prince DeGaulles, Paris, Le Prefire.
(10) 615 new and old Francs and change.
(11) 80,000 Bolivanos, 80 Argentinian Pesos, 40 Peru. Solos.

The government concedes that items (1), (3), (4), (6) and (9) are not instrumentalities of crime and consents to their return. We, therefore, make no ruling with respect to those items except to direct their return to defendant and to preclude the government from using them as evidence upon the trial. Neither side has elicited any evidence beyond bare description showing whether any of the remaining items were actually designed, intended or used as the means of committing the alleged crime. It is not self-evident from their description whether any of them were so designed, intended or used. Thus, the question of whether or not any of them were in fact instrumentalities of the crime is not susceptible of a ready and precise answer upon a preliminary motion to suppress.

The line of demarcation between what constitutes incriminatory evidence as distinct from an instrumentality of crime varies with each case and with the nature of the crime. The illicit traffic in narcotics is a highly organized clandestine business. Almost any object, however innocent, may be intended by the conspirators or employed by them as a means of forming or forwarding the criminal conspiracy. The tools of narcotics traffickers are different from the microfilm of a spy or the plates of a counterfeiter.

██ The ban of the Fourth Amendment is leveled not at all searches and seizures, but only at those which are unreasonable. Officers making a lawful search on a charge of this nature should not be held, therefore, to too fine a line lest instrumentalities of the criminal enterprise which it is their duty to seize be lost as evidence. Cf. United States v. Bell, 48 F.Supp. 986 (S.D.Cal.

1943). Rather, in the course of a lawful search, officers should seize any item which in their experienced judgment, knowledge of the circumstances, and good faith is reasonably capable of being designed, intended or used as an instrumentality of the alleged crime. Matthews v. Correa, 135 F.2d 534, 537 (2 Cir. 1943). Courts always have time to second guess their judgment should there be abuse.

■ Nor should the government, upon a preliminary motion to suppress, be required either to disclose its entire case to prove that the challenged items were actually used as instruments of the alleged crime, or be deprived, in default of such disclosure, of an opportunity to prove upon the trial that the challenged items were so used. It is, therefore, unnecessary for the government to prove upon a preliminary motion to suppress evidence that the seized items were actually used or intended to be used as instrumentalities of the criminal conspiracy. The search is not unreasonable if the items are reasonably capable of such use, and that is all that the government need show upon the instant motion. United States v. Klaw, 227 F.Supp. 12 (S.D.N.Y.1964); United States v. Lord, 184 F.Supp. 923, 926 (S.D.N.Y.1960). Cf. United States v. Poller, 43 F.2d 911, 913 (2 Cir. 1930) where Judge Learned Hand upheld a search as to papers which bore upon the alleged crime.

We do not overlook, however, the decision in this district of Judge Murphy in United States v. Loft, etc., 182 F.Supp. 322 (S.D.N.Y.1960), which has been called "an example of the application of the means and instrumentalities rule at its worst." Kaplan, Search and Seizure: A No-Man's Land in the Criminal Law, 49 Calif.L.Rev. 474 (1961). We note, however, that there was no indictment in the Loft case. We think that fact distinguishes this case, but, even if it did not, we would feel constrained, with all respect, to follow what seems to be both the weight of authority and the better rule.

Petitioner was the accredited Mexican Ambassador to Bolivia. His status and ready proof of it could reasonably have been used or intended as the means of free and easy travel without arousing the suspicion of Narcotics Agents much less the scrutiny of Customs authorities. His deceptive use of his credentials could plainly be used to cover up the illegal enterprise and defendant's role in it. Cf. United States v. Lindenfeld, 142 F.2d 829 (2 Cir.), cert. denied, 323 U.S. 761, 65 S.Ct. 89, 89 L.Ed. 609 (1944).

■ It seems abundantly clear, therefore, that items (1) through (5) seized from petitioner's person may well be instruments of crime in the circumstances of this case. Likewise items (2), (5), (7), (8), (10) and (11) seized from petitioner's hotel room are clearly capable of being used as instruments of travel or escape or intended for such use. Travel, the money to pay for it, and documents necessary or convenient to accomplish it are likely tools of those engaged in an international narcotics conspiracy. Cf. United States v. Lord, supra, 184 F.Supp. at 926. Item (7) is essential to insure continued passage on the airline and may, therefore, have been used to carry out the criminal conspiracy.

Thus, any of the challenged items may well prove upon the trial to have been intended or used as instrumentalities of the criminal conspiracy. If the government fails to elicit such proof upon the trial, the items should then be returned to defendant.

Accordingly, the motion is granted to the extent of the government's consent and denied in all other respects without prejudice to renewal upon the trial should the proof fail to establish that the challenged items were instrumentalities of the alleged crime.

So ordered.